The Honorable Richard A. Jones

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY, et al.,<br><br>Defendants. | NO. 2:19-cv-01059-RAJ<br><br>CITIZEN'S OF EBEY'S RESERVE AND PAULA SPINA'S MOTION TO ADMIT EXTRA-RECORD EVIDENCE<br><br>NOTE ON MOTION CALENDAR: APRIL 16, 2021 |

**PLAINTIFFS' MOTION FOR LEAVE TO SUBMIT EXTRA-RECORD EVIDENCE**

Plaintiffs Citizens of Ebey's Reserve and Paula Spina seek leave to submit the extra-record Declaration of Dr. Christopher Greacen and four exhibits to Dr. Greacen's Declaration (collectively herein, the "Greacen Declaration"). The Greacen Declaration demonstrates that the Navy failed to adequately consider information regarding the amount of fuel consumed by the Growlers (and, therefore, failed to correctly estimate the greenhouse gas emissions from the Growlers and the resulting climate change impacts). The Greacen Declaration also is necessary to explain the Navy's complex greenhouse gas emissions calculation methodology which was not coherently described in the Environmental Impact Statement.



**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

The Greacen Declaration should come in under the first and third exceptions to the "general rule that courts reviewing an agency decision are limited to the administrative record[,]" *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005):

> We have, however, crafted narrow exceptions to this general rule. In limited circumstances, district courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Lands Council*, *supra*, at 1030 (internal quotations omitted).

**A. The Greacen Declaration is Admissible Under the First *Lands Council* Exception**

The Greacen Declaration should be admitted as extra-record material necessary to determine "whether the agency has considered all relevant factors and has explained its decision[.]" *Id*. An environmental impact statement "shall provide full and fair discussion of significant environmental impacts[.]" 40 C.F.R. § 1502.1. Here, in the EIS, the Navy understated the amount of fuel burned by Growlers by more than a factor of two, *i.e.,* actual fuel burn is more than double the number used to forecast greenhouse gas emissions. Consequently, the EIS understates the quantity of greenhouse gases emitted by the Growlers and, therefore, understated the climate impacts in the EIS. That inaccuracy can best be shown by reference to records in the Navy's files that the Navy failed to consider in drafting the EIS (and therefore omitted from the administrative record it filed with this Court).

Courts in this Circuit "have recognized numerous exceptions to [the] general rule, particularly where extra-record information is used to determine whether an agency considered all of the relevant factors, to explain an agency determination, or to determine whether an agency's 'course of inquiry



**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

was insufficient or inadequate.' *Alpine Lakes Protection Society v. U.S. Forest Serv.,* 838 F. Supp. 478, 481 (W.D. Wash. 1993); *see also Hells Canyon Pres. Council v. Jacoby,* 9 F.Supp.2d 1216, 1223 (D. Or. 1998) (collecting cases)." *Ursack, Inc. v. Sierra Interagency Black Bear Group*, 2009 WL 2422784, *6 (N.D. Cal. 2009). As stated by the Ninth Circuit:

> [I]t is both unrealistic and unwise to "straightjacket" the reviewing court with the administrative record. It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not. The court cannot adequately discharge its duty to engage in a "substantial inquiry" if it is required to take the agency's word that it considered all relevant matters.

*Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980).

"The Court may look beyond the record insofar as it is intended to show that the agency's research or analysis was inadequate." *Hausrath v. United States Dep't of the Air Force*, No. 1:19-CV-00103-CWD, 2020 WL 5848094, at *7 (D. Idaho Oct. 1, 2020). "The Court may properly consider material outside the administrative record . . . to determine whether [the defendant agency] failed to consider important factors in its NEPA analysis." *W. Watersheds Project v. Schneider*, 417 F. Supp. 3d 1319, 1329 (D. Idaho 2019), *appeal dismissed sub nom. W. Watersheds Project v. Bernhardt*, No. 19-36065, 2020 WL 3256842 (9th Cir. Mar. 27, 2020). "Considering extra-record evidence is warranted where the plaintiff alleges that an EIS has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism under the rug." *Id*. (internal quotations and citation omitted).

Here, the Navy had available records documenting actual fuel consumption by the Growlers at Whidbey. But instead of using that data, the EIS used a complex method for estimating fuel use. The Navy estimated fuel consumption for each flight by separately estimating the amount of fuel



**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

burned in each leg of a flight. The Navy then multiplied that number by the number of expected flights in the no action alternative and each of the action alternatives. Using this methodology, the EIS estimates that just over 64 million pounds of jet fuel would be consumed in the no action alternative (and greater amounts in the action alternatives). GRR 159665.

The Navy had available to it a much simpler and accurate method for estimating fuel use—the fuel records for the Growlers in the years immediately preceding preparation of the EIS. The Navy could have used those records to determine the amount of fuel used on average in each training flight and multiplied that number by the number of training flights expected in each alternative. At minimum, the Navy could have done that for the no action alternative to test whether its more complicated "fuel consumption per leg" method approximated reality.

But the Navy chose not to reference the actual fuel consumption records. We know that because the Navy did not include those records in the administrative record it filed with the Court. This motion seeks admission of those fuel consumption records to demonstrate that the Navy failed to consider those relevant documents which would have led it to a very different conclusion regarding the amount of fuel burned and, consequently, the amount of greenhouse gases emitted.

The most important of the omitted documents is the Navy's Fuels Management Office report of fuel consumed in FY 2016. Greacen Dec., Ex. B. That fuel depot document states that "in FY 2016, Growlers at Whidbey NAS were issued 20,253,643 gallons of fuel." Greacen Dec., Ex. B, at 2. Because a gallon of jet fuel weighs 6.79 pounds, Greacen Dec. at ¶ 11 and n.5, this is equivalent to about 138 million pounds of fuel, more than double the 64 million baseline year (2021) estimated in the EIS.



**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

The Navy expected the number of flights in the 2021 no action alternative to be about the same as the number of flights actually flown in 2016.[1] Thus, the fuel usage estimated for the no action alternative should have been about the same as the fuel actually consumed in 2016. The more than twofold difference between the 64 million pounds of fuel estimated in the EIS and the approximately 138 million pounds of actual fuel consumption in FY2016 indicates that the EIS dramatically under-estimates actual fuel consumption and, thus, greenhouse gas emissions. Greacen Dec. at ¶ 14.

Dr. Greacen identified this likely underestimate of fuel use in the Navy's draft EIS analysis and brought it to the Navy's attention in a public comment submitted on February 22, 2017. GRR 154092–154093. But at that time, Dr. Greacen did not have access to the Navy fuel depot reports referenced above. Instead, his comment was based on the Department of Defense's 2012 Selective Acquisition Report. That report provided less direct evidence of the Navy's under-estimation. The Selective Acquisition Report is a budgeting and requisition estimating document prepared by the Navy. Because it provides budget and requisition estimates, not data on actual fuel use, it is not as precise as the fuel depot data Dr. Greacen obtained after the EIS comment period closed.

The Selective Acquisition Reports dated December 2012 (Greacen Dec., Ex. A) and December 2015 (Greacen Dec., Ex. C) show that Department of Defense assumptions of Growler fuel consumption rates greatly exceed the fuel consumption rate analyzed in the EIS. The 2012 Selective Acquisition Report shows Growler fuel consumption at approximately five times greater than the number estimated in the EIS. Greacen Dec. at ¶ 23. It was that data that Dr. Greacen cited in his comment letter on the draft EIS. Similarly, the 2015 Selective Acquisition Report shows Growler fuel

[1] There is no evidence that there will be fewer Growler operations in 2021 than in FY2016. Under the no action alternative, Growler operations would remain approximately the same: 6,000–6,100 Growler FCLP operations at OLF, GRR 150330 (FEIS Vol. 1, Table 3.1-3); GRR 138290 (Section 106 Determination of Effect, Appendix C).



Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

consumption at approximately three and a half times greater than the number estimated in the EIS. Greacen Dec. at ¶ 24.

Dr. Greacen had tried to obtain the actual fuel depot data from the Navy prior to the due date for his comment on the draft EIS. To obtain that data, he submitted a Freedom of Information Act request on December 6, 2016. But the Navy did not comply with FOIA response deadlines and did not provide a substantive response to Dr. Greacen's FOIA request until March 24, 2017. Greacen Dec. at ¶ 28. By that time, the deadline for comments has passed. (The deadline was originally set as January 25, 2017 and extended to February 24, 2017. GRR 167643.) If the Navy had complied with FOIA deadlines and provided responsive records in a timely manner, Dr. Greacen would have been able to submit (and would have submitted) the Navy's FOIA response (the fuel depot data) with his comment on the draft EIS and thereby made it part of the administrative record. Greacen Dec. at ¶ 28.

The Navy's prediction of fuel use and consequent greenhouse gas emissions should have been grounded in and consistent with its historic fuel use reflected in the fuel depot data. Dr. Greacen's declaration and its attachments are necessary to show that the Navy failed to consider important factors in its NEPA analysis regarding fuel consumption and resulting greenhouse gas emissions and climate impacts. *See Inland Empire Pub. Lands Council v. U.S. Forest Serv.,* 88 F.3d 754, 760 n. 5 (9th Cir.1996) ("To the extent [the extra-record] declaration is submitted to show that the [agency] overlooked factors relevant to a proper . . . analysis, we will consider it"). They should be admitted under the first *Lands Council* exception.

### B. The Greacen Declaration is Admissible Under the Third *Lands Council* Exception

Dr. Greacen's declaration also should be admitted because it "is necessary to explain technical terms or complex subject matter[.]" *Lands Council*, *supra*, at 1030. The emissions calculation



**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

methodology in the EIS is not stated in a clear and understandable way on a single page, but must be pieced together by combining statements scattered across more than 100 disassociated pages in Volume 1 of the EIS, data tables in a separate volume, and EPA's December 1992 "Procedures for Emission Inventory Preparation." Greacen Dec. at ¶¶ 9, 15. The Navy, by accident or design, made the process of determining how the Navy calculated the Growlers' greenhouse gas emissions almost impossibly complex.

For example, as shown by email from Brigman Harman to Zachary Griefen dated October 19, 2020 (Greacen Dec. Ex. D), the Navy failed to analyze the impacts of any fuel burned by Growlers flying at an elevation above 3,000 feet. While ignoring emissions above 3,000 feet might be acceptable when analyzing criteria pollutants (like nitrogen dioxide) that only matter when emitted close to the ground, greenhouse gas emissions matter at any altitude. Greacen Dec. at ¶ 9. The exclusion of emissions above 3,000 feet probably accounts for some of the discrepancy between the EIS estimates of fuel consumption and the fuel depot records of actual consumption. But it was impossible to discern that the Navy's greenhouse gas emissions methodology excluded emissions above 3,000 feet without the benefit of Mr. Harman's email. This and other details of the Navy's opaque method for calculating greenhouse gas emissions are elucidated in Dr. Greacen's declaration.

In sum, the Greacen Declaration collects, clarifies, and explains the Navy's methodology for estimating greenhouse gas emissions. Greacen Dec. at ¶¶ 9, 15–16. The admission of the Greacen Declaration will aid the Court in understanding and assessing the adequacy of the Navy's analysis of the project's climate change impacts.



**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

Dated this 30th day of March, 2021.

Respectfully submitted,

BRICKLIN & NEWMAN, LLP

By: s/David A. Bricklin
By: s/Zachary K. Griefen
David Bricklin, WSBA No. 7583
Zachary K. Griefen, WSBA No. 48608
1424 Fourth Avenue, Suite 500
Seattle, WA 98101
Telephone: 206-264-8600
Facsimile: 206-264-9300
E-mail: bricklin@bnd-law.com
E-mail: griefen@bnd-law.com

*Attorneys for Citizens of Ebey's Reserve and Paula Spina*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2021, I served a copy of the foregoing on counsel of record electronically through the Court's CM/ECF system.

By: *s/Peggy Cahill*
Peggy Cahill
Legal Assistant
Bricklin & Newman, LLP
1424 Fourth Avenue, Suite 500
Seattle WA 98101
cahill@bnd-law.com
Phone: 206.264.8600

## CERTIFICATE OF MEET AND CONFER

I hereby certify and declare that David Bricklin and I met and conferred by telephonic conference call with Gregory Cumming and Susannah Mitchell, counsel for the federal defendants, and Aurora Janke, counsel for the State of Washington, on March 29, 2021. Due to counsels' location in different areas of the United States, an in-person conference was not feasible. Counsel attempted in good faith to reach an accord that would eliminate the need for a contested motion. Counsel for COER described the substance of the contemplated motion and the reasons why the motion was needed and sought counsels' assent to the motion. Counsel for the federal defendants informed us that they will oppose the motion at this time, though they reserved the option of changing their position. Counsel for the State of Washington authorized us to say that the State of Washington does not oppose the motion.

By: *s/Zachary K. Griefen*
Zachary K. Griefen
Bricklin & Newman, LLP
1424 Fourth Avenue
Suite 500
Seattle WA 98101
griefen@bnd-law.com
ph.: 206.264.8600



**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300